Good morning and welcome to the 11th Circuit. Before we begin, I just want to share a couple of things. First, I think you're all familiar with our timing system. And while we don't have our lights, because we're doing this by phone, the timing still applies. So the courtroom deputy, Ms. Geddes, will alert you as to when you have two minutes left of your speaking time and when your time has concluded. We ask that you please stick to these time limits. If we have any questions for you that take you over the time limit, then of course, feel free to answer those questions, because we're asking them since we want to know the answers. And we look forward to a good day of oral argument. We will begin today with United States of America v. Eulalio Martinez. We'll hear first from Mr. Dodson. Good morning. Jonathan Dodson with the Federal Defender's Office in Macon, representing Eulalio Martinez. And may it please the Court. In United States v. ABLE, this Court adopted a tough standard governing whether to dismiss a juror mid-deliberation. And the reason that this standard is tough is to ensure that we're not confusing or mistaking a dissenting juror for a juror who is refusing to follow the law or cannot follow the law. The District Court below abused its discretion by not applying this tough standard, by removing a juror, although there was a possibility that the Court acknowledged that she could proceed with deliberation, and by removing the juror for a legally irrelevant reason. And I want to begin with that last point, because I think it's the simplest ground for this Court to reverse. As the Court knows, the standard of refusal applies to this kind of error. It will reverse if a juror is removed. One of the reasons is if it's for a legally irrelevant reason. And the District Court's own words show that it did just that. It said, I'm convinced she cannot go on with jury service, and if she stays in the jury room, we will at best have a hung jury. So it explicitly factored into its decision to remove this juror a concern about a hung jury. Now that's not only an irrelevant reason, that's a prohibited reason. In fact, that's what the ABLE standard is all about, is trying to avoid dismissing a juror because they're dissenting. And if we're dismissing a juror because they're deadlocked, because we're afraid of a deadlock, then we're dismissing a dissenting juror. Mr. Martinez had a right to a unanimous verdict, and that means that if the jury could not reach a unanimous verdict, he had a right to live to fight another day. Counsel? Yes? Counsel, this is Robin Rosenbaum. I understand what you're saying, and there are a lot of troubling things about this case. But let me ask you, what else could... I mean, the Court does say at one point, I can't understand what you're saying, and that's immediately after the juror says that she can't find him guilty. So it's possible that, you know, you could read this transcript to see that the Court did not hear that she said that he wasn't guilty. And so considering that the juror on several separate occasions told the Court that she can't make a decision, that she can't come to a verdict, and that she can't judge these kinds of things, what else do you think that the Court should have done to rehabilitate this juror? Well, it may be that the Court's... I mean, I understand it's a very tough problem that the Court has, and the Court has to tread lightly. We don't want to get into why sometimes that the juror's voting feels the way they do. But I think with Abel and some of these other cases, what the value judgment is, it's better to leave a potentially problematic juror on the jury than it is to either invade into jury secrecy of deliberations or dismiss a juror who might be feeling the way they do based on a sincere assessment of the evidence. So I'm not suggesting that the Court erred in not pushing the juror harder in terms of investigating more what she felt. Another point, even if the Court didn't hear that the not guilty part, you know, her words are still vague and open enough that, you know, they were open to the substantial possibility that she felt the way she did based on the evidence and the instructions in this case. Now, we presume that a juror follows their oath until there's been a showing of some extraneous influence. And here I believe her words are too vague, and the fact that she was emotional is itself kind of a vague thing without being able to better articulate that. Counsel, this is Judge Anderson. It seems to me that this case ought to be analyzed something like the following. You made virtually no objections contemporaneously, so all of our review is pursuant to the plain error standard. And with respect to the standard, it seems to me the district court was silent, but it seems to me that we would invoke the presumption of regularity and presume that he knew what the standard was. The standard was clear. Abel had been out quite a while. While the standard is tough, our standard of review is clearly erroneous. So it's hard for me to think that the district court was clearly erroneous for concluding that she simply was so upset she could not decide this case. She said that numerous times. And while there were a few couple of things like the suggestion that she might have thought he was not guilty, and also about the hound gear, there were a couple of things that were said, but it doesn't seem to me that that rises to the level of clear error. How do you respond? First, I think that the district court's own words rebut that presumption of regularity because it said even while it was saying, I'm convinced she cannot go on jury service, it was acknowledging a possibility that in fact she could, but that it would cause a hung jury. So that's sort of the opposite of the Abel standard. And so I think in substance, it wasn't just that the court didn't recite the standard, it was applying something that was not the Abel standard. I don't think we can tell from the court's words if even the district court believes beyond a reasonable doubt that she couldn't go on with jury service. I think the court's words suggest that the court did think that was a possibility. So I think in that way, the court didn't apply. I'm not, Judge Anderson, yeah, I'm not sure why the judge's mention of hung jury means that he thought that she could follow the law, but was thinking he was not guilty. It was a hung jury, even though she simply couldn't make a decision. Wouldn't that be a hung jury, too? That would be a hung jury as well. And I would fall back then again on the presumption, though, that a juror is abiding by the oath without a sufficient showing of some extrinsic influence. So we would presume that a hung jury is a legitimately hung jury and not one based on something extraneous to the law and the evidence. I don't agree that these issues weren't preserved with the exception of maybe the court's not better detailing what the jurors said to the parties, but the defense counsel did object to removing that juror and told the district court what he wanted the court to do, which was leave the juror on and give some kind of a supplemental instruction. And I believe that's all that Rule 51 requires, is notice of the act that a party wants the court to take. As to the clearly erroneous standard, I think that has to take account of the standard of proof below. So it's sort of a mixed question of fact and law when the court's applying this ABLE standard. And in ABLE, at 1303, this court said if the trial court applies this standard and determines as a matter of fact that no substantial possibility exists, we will review that finding, that finding only for clear errors. So I think that is a finding that the court didn't make here, but that's the finding that the court would review extremely deferentially. But because it didn't make that finding, we don't know what the district court would have done under the correct standard. So, counsel, this is Robert Luck. In Oscar, the magic words weren't said there. In fact, in Oscar, we said that there was no need for there to be any magic words. And yet, you still gave that deferential standard overview. Isn't the explanation that Judge Anderson gave that she thought she couldn't go on and that would result in a hung jury sufficient under Oscar for us to give the clear error standard overview? I don't think so, because I think in Oscar... Counsel, two-minute warning. I do think in Oscar, in substance, the court was applying that standard. There was a very much better developed record, and the court was weighing the credibility of what other jurors said and able to exclude the substantial possibility based on a much better record. Whereas here, the court said what it said about a hung jury, and while that could be an illegitimate hung jury, it could also be, and I think we should presume that a jury hangs based on legitimate reasons without some better showing that some other influences come to play. I don't think that the juror's self-assessment that she couldn't go on should be dispositive. I would compare it to when a jury... Counsel, this is Robert Luck. How is that the case? In Geffrand, simply based on a letter that the jury sent to the court, the court made its findings without even discussing it or talking with the juror. How can the judge who heard and made a self-assessment of what the district court's belief in what that juror said, how is that not entitled to the weight that we would give if we were reviewing any finding of fact that any fact testimony? Two reasons. First, I think because, you know, based on my argument that the court didn't apply the correct standard, we don't have the kind of finding called for under able to which to defer, and we don't know that the court would have made that finding under the able standard. And I see I'm out of time on my clock, so I'll rest there. All right. Thank you, Counsel. You've reserved four minutes for rebuttal, and we'll hear from the government now. Good morning, Your Honor. May I please support C.G. John on behalf of the United States? This court should not parse the cold record, but read the judge's decision and C.B.'s statement in the context of this entire conversation. The transcript strongly supports that C.B. was having a clear meltdown once the weight of the jury service dawned upon her. The district court did not abuse its discretion when it dismissed an emotionally distraught juror, C.B., who was experiencing a paroxysm of weeping and expressly refused many times that she could not proceed with jury deliberations simply because she could not make a decision about somebody else's life. She definitively and clearly relayed that statement to the district judge. Based on the record, the district court did not clearly err in finding that the juror refused to proceed with deliberations, therefore she had to be dismissed. The district court's authority to dismiss her stemmed from Federal Rule of Criminal Procedure 23B.3. The district court, under that rule, may dismiss a deliberating juror upon finding of good cause. Counsel, I'm sorry to interrupt. This is Robin Rosenbaum. I am troubled by a couple of things here. One, the court does talk about how we're going to have a hung jury if she is dismissed. As counsel for Mr. Martinez pointed out, that's exactly the opposite of what we should be considering when we're talking about the dismissal of a juror. And two, when you go through the record of the interaction between the court and the juror, she is clearly crying and upset and says she cannot go on, but there's not a whole lot of back and forth. If you look at it, she basically says that the first time, the court says, I can't understand what you're saying. And then she says it another time, and then the court gives a longer response in which the court says, I'm not going to lightly release you from your service, but then immediately says, do you think you can go on with this deliberation or not? And she says no, and then the court releases her without anything further after saying, I'm not going to lightly release you from your service. So I think these things are a little bit troubling, and I wanted to give you an opportunity to respond to that. Thank you, Your Honor. I'll start by responding to your second question first. So in response to that, the government yesterday moved to supplement the record from the audio recording of this conversation, and that audio recording will provide this court as the court accepted as the record for this appeal, will reveal that, will reveal how bad of a meltdown this juror was having, that she was out of breath, and when she was talking to the judge at the beginning of the conversation, her speech was blurred, that she was, she could not speak clearly at all. And in fact, she was weeping throughout the entire conversation. And so there are invisible parts to this record that this report was able to observe on the scene, and that is why this court has held that this court is uniquely situated to make this kind of determination where jurors' motivations and intentions are at issue. And her demeanor that is not apparent on the record is precisely what prohibited this report from further engaging in a deeper conversation with this juror, because she was not in a state where she could calmly explain herself and have a logical conversation with the judge. The enormity of jury service clearly dawned upon her that prevented her from thinking logically and speaking cogently to the district judge. And the district judge therefore had to make a difficult decision, especially given this to too much question, that it had to be careful not to invade the jury, the secrecy of jury deliberation. And that is, that I believe sufficiently explains the length of the conversation between the judge and the juror. And going to the first question, which deals with the hung jury, again, I emphasize that this court should not parse the whole record, but read the judge's decision and Stevie's statement in the context of what occurred in the courtroom. And that is that Stevie was having a complete meltdown, that she was not even able to speak clearly to the judge, but what she clearly told the judge was she definitively could not proceed with jury deliberation because she could not make a decision about somebody else's life. And based on that conversation, the judge goes back to counsel. And at first he explains and summarizes the conversation. He says the lady juror is very upset. He has done what he could do to calm her down and convince her to continue with jury service. But at the end of the day, he was convinced that she could not go on with the jury service. So it was not simply two sentences that the judge has delivered to counsel. But in fact, it explains logically to counsel as to how he had reached that conclusion. And that is the lady juror was simply very upset and he could not change her mind as to convince her to go on with the jury service. Council, sorry, this is Robert Luck. There seems to be, I want you to sort of explain to me if I have this right. With regard to the hung jury issue, there seems to be two ways that courts look at it. Way number one is in situations where the court and the parties or the court specifically is made aware that the jury is deadlocked for some reason. And then based on that decision removes a juror for some contextual reason like emotion or whatever, that that is what courts are saying is problematic and what we were trying to guard against and able. On the other hand, you have situations where jurors for whatever reason are not and cannot deliberate and therefore would cause a hung jury or some sort of paralysis in the jury deliberation and are removed for that reason that they are unable to follow the instruction that they are required to deliberate. That seems to, the first thing that I described just seems to be with Thomas and Hernandez, the second circuit cases are describing. The second thing I described seems to be what Abel and some of our cases were describing. Is that how you understand the dichotomy? Am I missing something there? And can you weigh in on that? Yes, Judge, I agree with your assessment. And I, the government maintains that this case falls under the second scenario, second line of cases that this court has come down upon because what's important here is the timeframe. That judge got the message from court and deputy only 15 minutes into jury deliberation. And this was a full four-day trial. And so the fact that he got the message from the court of recidivism only 15 minutes into deliberation shows that this juror probably began her meltdown well before the judge got the message. And that's, and even defense counsel later on admitted to the district judge while he, when he objected to dismissing CD that this was a too short of time to make any sort of decision. And this timeframe altogether, as well as the emotional distress that CD shows, that CD was experiencing at the moment showed that this was not based on the sufficiency of the evidence, that this was not based on what happened in the jury deliberating, deliberation room. It was based on CD's inability to participate in jury deliberations because that she could not make, as she said, she could not make a decision about somebody else's life. And she clearly refused to proceed with the jury service. And going back to the plainer of standards, the government would like to highlight that the defense counsel in the district court has only raised a general objection as to the dismissal of CD. That counsel has not raised any specific objection to the explanation of the district court's decision. It did not ask the district court to use specific language, including substantial possibility or beyond reasonable doubt. And that is why the government has argued to apply, that this court should apply the plainer. Because by not raising those specific objections, defense counsel has deprived the district court to review and, if necessary, supplement the record by articulating its reasons and make necessary factual findings. And that also ties back to that the district court was in a very difficult position in this case. And, again, it was, as this court has held, it was uniquely situated to make this difficult decision where jurors' motivations and intentions are at issue because it was on the scene and it was, it directly observed CD while she described her problem. And that included what does not come through the record, which is CD's demeanor, the extent to which that she was having a meltdown, how slurred her speech was because she was weeping so hard that, in fact, she was crying throughout this conversation. She was out of breath and she was having difficulty to catch her breath. And that is what informed the district court's decision as to why it had to dismiss CD. And that conforms with this court's decision, including Oscar and Adele, where the district court did not, as Judge Luck has said, that the district court need not use magic words, but, indeed, it will, the district court will review the implication of the district court's ruling to find that there was no substantial possibility that CD would not participate fairly and follow the law in deliberation. And if this court has no further questions, the government rest on its feet. Thank you, Your Honor. Thank you, counsel. Mr. Dodson, you have four minutes for rebuttal. Thank you, Your Honor. I want to address the juror's emotion and also say something about plain error. As to the juror's being emotional, we don't have any evidence that she was emotional in the jury room when they were deliberating. I don't know that that's a fair inference to say that she was that emotional in the jury room. It can be. Counsel, this is Robert Luck. Is that true? As I understand it, page 87 of docket entry 87, which is the transcript in the case, the way this started was that the district court was told by the courtroom deputy that CD was, quote, having paroxysm of weeping and, quote, not go on with deliberations. Isn't that the evidence of what was happening before the court ever talked to her or got involved? I think the court was referring to the courtroom clerk, who wouldn't have been in the jury room. The court said, no, that's the courtroom clerk for Judge Lawson. And I was going to say, I think that it can be pretty intimidating talking to the judge in chambers. And it could have very well been that her emotions just sort of boiled over as she's sort of begging the judge to let her off the hook. We did not hear from other jurors that she was in any way derailing the deliberations up to that point. And I think sometimes a juror may need to just be pushed to do their job. That happens when we give an Allen charge. A lot of times, jury will come back and say, we don't think we can come to an agreement. We're at loggerheads. We can't come to an agreement. We give an Allen charge, and a lot of times they manage to come to unanimous agreement. And I think this is very similar to that. We're not too quick to let a juror off the hook. And not that I'm unsympathetic, but it is a heavy responsibility, and trials can take an emotional toll on everyone involved. But that can't be reasoned, particularly where there's some indication that she believes she's not guilty. That can't be a reason to replace the juror. As to the plain error standard, I would say that I think we satisfy that, even if it applies. And I don't believe it does. I think the issues were fairly subsumed into the defense counsel's objection. But ABLE stands for two things. One, it very clearly established the standard of proof that a district court judge applies. And so I think not applying that standard is plain error under ABLE. And second, it shows that the last thing we want to do is dismiss a juror because they are a dissenting juror. Why do you think he did not apply the standard? It seems to me that we apply the presumption, this Judge Anderson talking, the presumption of irregularity. And for example, if you had made a contemporaneous objection, he then would have stated what is assumed that he knew what the law was. I just don't think based on the district court's own words. I think the district court is acknowledging a possibility of a hung jury. And I know that there's some possibility that he intended to imply an illegitimate hung jury, but that's not what the court said. But if he's acknowledging a possibility of a hung jury, then I think the presumption of the jurors following their oath requires believing that this court's acknowledging that the juror can go on and deliberate. It's just that the juror can't agree with the other jurors. I also think we would satisfy plain error as to not removing a juror simply to avoid a hung jury. Again, because Able makes very clear that's not something that a court should do. Counsel, your time has expired. I'll just ask this court to reverse. Thank you. Thank you very much, Counsel.